**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs,
SUSAN JOHNSON and CHRISTI MCCRACKEN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSAN JOHNSON and CHRISTI MCCRACKEN, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>GIGSMART, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT;**<br><br>**(2) INJUNCTIVE RELIEF; AND**<br><br>**(3) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200 – 17209 *ET. SEQ.*]** |

Plaintiffs Susan Johnson ("Johnson" or "Plaintiff") and Christi McCracken ("McCracken" or "Plaintiff") (collectively "Plaintiffs") hereby allege on information and belief against Defendant Gigsmart, Inc. ("Gigsmart" or "Defendant") as follows:

**I.   INTRODUCTION AND NATURE OF ACTION**

1.   Defendant is a staffing company that provides hourly workers to businesses. Gigsmart advertises pre-vetted, reliable workers available at a moment's notice without the formality of interviews or traditional hiring models for companies in need of extra labor. So called "shift gigs" are carried out by relatively low-skilled workers like Plaintiffs. Gigsmart misclassifies its workers as independent contractors and not employees which violates a host of California laws protecting workers and providing minimum wages.

2. On March 1, 2024, Plaintiffs filed a Class and Representative Action Complaint in Alameda Superior Court challenging Gigsmart's classification of its staffing employees as independent contractors and seeking available remedies under California law (the "Underlying Action"). *See* Ex. 1 (Class and Representative Action Complaint filed in the Underlying Action). Plaintiffs served the complaint in the Underlying Action on March 27, 2024.

3. On April 4, 2024, Gigsmart initiated two arbitration proceedings with the American Arbitration Association. *See* Ex. 2 and Ex. 3 (the "Arbitration Proceedings"). The Arbitration Proceedings seek declaratory and injunctive relief finding that the Plaintiffs agreed to arbitrate all disputes between Plaintiffs and Defendant in Cincinnati, Ohio under Ohio law based on Gigsmart's Terms of Use and End User License Agreements last revised 1/30/24 ("Terms of Use"). In short, rather than move to compel arbitration in the Underlying Action, Gigsmart seeks a declaration from an arbitrator that its Terms of Use compel all actions brought by Plaintiffs to go forward in arbitration in Ohio under Ohio law.

4. On April 10, 2024, Plaintiffs advised that, pursuant to Labor Code section 925, they are voiding the out-of-state (Ohio) venue and choice of law clauses contained in the Terms of Use to the extent these clauses were ever valid in the first place. Relatedly, Plaintiffs asked Gigsmart to confirm by April 12, 2024 that it accepted and understood that Ohio law and Ohio venue were no longer enforceable such that the Arbitration Proceedings should be withdrawn. As of today's date, the Arbitration Proceedings have not been withdrawn and Gigsmart has not confirmed that its out-of-state venue and choice of law clause is void or otherwise invalid. Gigsmart's refusal to withdraw the Arbitration Proceedings and acknowledge that its choice of venue and choice of law clauses are void has caused Plaintiffs to shoulder the time and expense of dealing with and responding to these illegal attempts. This harm will continue until this Court determines the legal obligations of the parties under the Terms of Use and enjoins Defendants' out-of-state arbitration proceedings.

5. Gigsmart's efforts to enforce its void and illegal out-of-state choice of law and venue clauses should be declared illegal and should be enjoined. The parties never validly agreed

to litigate California employees' employment claims out of state under another state's laws and even if they had, the voiding of the agreements means they are not currently enforceable.

6. For these reasons, the Court should enter a declaratory judgment finding that the parties did not agree to arbitrate employment claims out of state under Ohio law and should enjoin Gigsmart from proceeding with the Arbitration Proceedings. Without the Court's intervention, Plaintiffs will be forced to continue to undertake the significant expense of defending themselves in an inconvenient and unlawful forum.

## II.     JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States. If forced to arbitrate in Ohio under Ohio law, Plaintiffs will incur in excess of $75,000 in attorney's fees to address the matter. Also, the underlying state court action which Defendant seeks to compel to arbitration through its arbitration demands has a value well in excess of $75,000. Gigsmart seeks to eliminate that value via its arbitration demand.

8. Venue is proper in the Northern District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because Gigsmart is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District. The business and activities which are the subject of this litigation are being conducted throughout the State in each and every District on a uniform and consistent basis. Gigsmart is also seeking to interfere with the Underlying Action in Alameda County through the Arbitration Proceedings thereby directing its illegal and unenforceable efforts towards the Northern District.

## III.     THE PARTIES

9. Johnson is and at all relevant times was a resident of California. She worked for Gigsmart to provide staffing services in this state also.

10. McCracken is and at all relevant times was a resident of California. She worked for Gigsmart to provide staffing services in this state also.

11. GigSmart, Inc. is a Delaware corporation with a principal business address at 999 18th Street, Suite 1750S, Denver, Colorado 80202. On information and belief, it has no connection to Cincinnati, Ohio at all despite attempting to force all disputes between it and its workers to individual arbitration here and under Ohio law. Gigsmart carries out substantial business in this District and is subject to personal jurisdiction in this District.

### IV.     GENERAL ALLEGATIONS

**A.     Gigsmart is a presumptive employer that misclassifies its staffing employees as "independent contractors."**

12. Under California's test for being an employee or an independent contractor, a hiring entity like Gigsmart must establish that its workers are free from its control in performing their work and that they provide services outside of the usual course of the hiring entity's business. Gigsmart is a staffing company that tightly controls its workers like Plaintiffs and cannot meet its burden to disprove an employment relationships.

13. Gigsmart operates a staffing company which "allows business to directly access on-demand workers for short and long-term jobs[.]" https://gigsmart.com/about-us/. GigSmart is available in all 50 states across the United States. https://help.gigsmart.com/what-cities-are-you-available-in-requesters.

14. To book Gigsmart's Workers, Gigsmart's clients must first create an account with Gigsmart from their web browser or through the Gigsmart app. The client then posts a gig to Gigsmart. Vetted Workers then accept the posted gig. https://help.gigsmart.com/what-is-gigsmart-requesters. When Gigsmart's clients pay Gigsmart for its Workers' services, Gigsmart retains ~20% of the payment. Gigsmart's clients are often in the warehousing, catering, restaurant, retail, logistics, delivery, construction, landscaping, and facility services industries. https://gigsmart.com/.

15. To fulfill its customers' staffing requests, Gigsmart maintains a network over one million Workers "across all industries and positions" with "experience aligned with [the client's] specific needs." https://gigsmart.com/hire-workers/temporary-staffing/. Plaintiffs were two such Workers.

16. Needing to satisfy its customers and to provide the staffing services they want, Gigsmart retains and exercises a great deal of control over its Worker workforce. For example, Gigsmart sets start and stop times for work, requires location tracking and data-enabled smart phones during work hours, punishes or terminates workers for not timely responding to potential gig assignments, punishes or terminates workers for failing to show up for gig shifts once accepted, and retaining discretion to not pay for shifts if the worker is late.

17. Integral to Defendant's staffing business, Defendant utilizes the labor of Workers, like Plaintiffs and the Class they seek to represent, to carry out gig services for Gigsmart's third-party customers. Gigsmart labors Workers as "independent contractors." In short, these Workers perform a central part of Gigsmart's staffing business: the labor for Gigsmart's customers for which the customers contract with Gigsmart to staff. The work of Workers is necessary to Gigsmart's staffing business and is continuously performed for Gigsmart. Further, Gigsmart holds itself out as a staffing business. Workers are naturally an essential component of Gigsmart's business model.

18. Gigsmart strictly controls and regulates Workers. Workers must follow the terms of Gigsmart's onerous Terms of Use along with other written instructions from Gigsmart. Under these operating requirements and standards, Gigsmart exerts control and direction on Workers in connection with the performance of their staffing services, both in contract and in fact.

**B.  Plaintiffs brought the Underlying Action to hold Gigsmart accountable for its violations of California labor laws.**

19. As noted in the Introduction, Plaintiffs filed a class and representative action against Gigsmart to seek damages and penalties stemming from its violations of California's employment laws. *See* Ex. 1.

**C.  Gigsmart initiated the Arbitration Proceedings to try to force Plaintiffs to arbitrate their claims out-of-state under Ohio law.**

20. Despite being a Deleware incorporated company with a principal office in Colorado and with no apparent connection to Ohio, Gigsmart's Terms of Use require arbitration of any claims between Gigsmart and its workforce which "shall be conducted in Cincinnati, Ohio."

Furthermore, the governing law between the parties under these terms is "the laws of the State of Ohio. . . ."

21. The choice of venue and choice of law clauses are void for two independent reasons. First, under Labor Code section 925, it is illegal to force a California worker to, as a condition of employment, agree to forgo the protections of California law or to adjudicate claims outside of this state. Any provision violating these rules is voidable at the employee's request.

22. Plaintiffs both voided any consent they may have expressed for Ohio law to apply or for resolving claims out-of-state. This occurred via an email correspondence between Plaintiffs' counsel and Gigsmart's counsel on April 10, 2024. Gigsmart has not accepted the voiding of this provision or agreed to halt the out-of-state arbitration proceedings it filed in Ohio necessitating this action.

23. Second, under ordinary choice of law principles, there is no binding agreement to resolve the claims at issue in Ohio under Ohio law. Initially, there is no necessary substantial relationship between the parties and Ohio nor is there a reasonable basis for the choice of law clause. As noted above, Defendant is a DE company based in CO. Plaintiffs are California citizens who worked for Gigsmart exclusively in this state. It is entirely unclear how Ohio law or venue has any relationship to this case. Plaintiffs' best guess is that Gigsmart hired lawyers from Ohio to write its Terms of Use and they simply put Ohio law down out of habit despite the entire lack of connection between the relevant transaction and the state of Ohio.

24. Even if there were a substantial relationship between Ohio and this case, applying Ohio law to claims by California employees is contrary to California public policy. Employment laws are very important to this state and proper worker classifications are important not just for the workers involved, but also for society at large. Misclassifying workers deprives them of minimum wages and other labor protections like workers' compensation. It robs the state and federal government of needed tax revenues. And it is unfair to law abiding competitors who are at a disadvantage when they follow the law and pay full wages.

25. While Ohio has no interest in seeing its laws applied to California workers, California has a large interest in seeing its laws apply in this context.

## V.     FIRST CAUSE OF ACTION

### For a Declaratory Judgment

26. Plaintiffs incorporate by reference each and every allegation contained above.

27. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

28. An actual, present, and justiciable controversy exists between Plaintiffs and Gigsmart concerning their respective rights and duties. Plaintiffs allege that no enforceable choice of law or choice of venue clause exists in the Terms of Use whereas Gigsmart seeks to arbitrate in Ohio under Ohio law and has filed the Arbitration Proceedings to try to accomplish that.

29. Because Plaintiffs voided any (illegal) choice of law or choice of venue clauses in the Terms of Use and, separately because basic choice of law principles warrant applying California law and not Ohio, the Court should enter judgment for Plaintiffs.

30. Pursuant to its authority under the Declaratory Judgment Act, this Court should therefore enter a judgment declaring that the choice of law and choice of venue clauses in the Terms of Use are void or otherwise not enforceable.

## VI.     SECOND CAUSE OF ACTION

### For Injunctive Relief

31. Plaintiffs incorporate by reference each and every allegation contained above.

32. Gigsmart filed the Arbitration Proceedings asserting claims for declaratory relief with the American Arbitration Association in Ohio. Unless enjoined, Gigsmart will continue to pursue such efforts and claims to relief.

33. Unless Gigsmart is enjoined from pursuing its Ohio efforts and claims, Plaintiffs will suffer irreparable harm because they will be forced to continue to incur the expense of defending themselves in Ohio in the arbitration proceedings. Gigsmart should be prevented from foisting upon Plaintiffs an arbitration process to which it has no contractual right.

34. Gigsmart will suffer no irreparable harm in the event an injunction issues. Gigsmart can move to compel arbitration of the Underlying Action in the normal course of that litigation. If

it can demonstrate a valid arbitration agreement with a valid choice of venue and choice of law clause, the court presiding over that action will make such a determination.

35. The balance of equities weighs in favor of an injunction.

36. The public interest would be served by enjoining Gigsmart from pursuing its Ohio claims when the Alameda court is already presiding over the Underlying Action and the inherent arbitration and choice of law/venue defense Gigsmart may raise there. As noted above, California law aims to protect workers and society at large through its employment laws governing employment relationships in this state. The public interest would be served by adhering to this strong public policy, and thus enjoining Gigsmart's efforts in Ohio.

## VII.   THIRD CAUSE OF ACTION

### For Violation of California's Unfair Competition Law –

### Business and Professions Code § 17200 et seq.

37. Plaintiffs incorporate by reference each and every allegation contained above.

38. The Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Unfair practices include those that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Alternatively, unfair practices are those that violate a public policy as declared by specific constitutional, statutory, or regulatory provisions.

39. As discussed above, Gigsmart seeks to enforce venue and choice of law clauses within the Terms of Use against Plaintiffs that are illegal and otherwise violate California public policy.

40. As a result of these unfair business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of having to defend themselves in proceedings in Ohio under Ohio law, despite Gigsmart lacking any contractual right to bring such an action in that forum or under those laws.

41. Pursuant to Business and Professions Code §17204, Plaintiffs and the general public are entitled to an order of this Court enjoining Gigsmart's misconduct, and any other orders and judgments that may be necessary to provide for complete equitable restitution to Plaintiffs.

1  Plaintiffs and the general public will be irreparably harmed or denied an effective and complete
2  remedy if such an order is not granted.

### VIII. PRAYER FOR RELIEF

Plaintiffs pray for judgment against Gigsmart, as follows:

1. A declaratory judgment by this Court that the parties did not form a valid or enforceable agreement to have claims resolved in Ohio or under Ohio law;

2. A preliminary injunction or other injunctive relief enjoining Gigsmart from pursuing its claims against Plaintiffs in arbitration in Ohio and under Ohio law without the consent of Plaintiffs;

3. Appropriate injunctive relief under Business & Professions Code section 17200 *et seq.*, including public injunctive relief;

4. For costs of suit incurred herein; and

5. Granting such other relief as may be just and proper.

Respectfully submitted:

DATED: April 15, 2024

**NICHOLAS & TOMASEVIC, LLP**

By:  */s/   Shaun Markley*
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs,
SUSAN JOHNSON and CHRISTI MCCRACKEN