# EXHIBIT 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**03/01/2024 at 01:23:15 PM**
By: Damaree Franklin,
Deputy Clerk

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs SUSAN JOHNSON and CHRISTI MCCRACKEN,
individuals, on behalf of themselves and all others similarly situated

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| SUSAN JOHNSON and CHRISTI MCCRACKEN, individuals, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GIGSMART, INC., a Delaware corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 24CV066123 <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];** <br><br> **(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, §§ 221-223];** <br><br> **(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];** <br><br> **(4) FAILURE TO PAY OVERTIME [LAB. CODE, § 510];** <br><br> **(5) FAILURE TO PROVIDE MEAL PERIODS [LAB. CODE, § 226.7];** <br><br> **(6) FAILURE TO PROVIDE REST BREAKS [LAB. CODE, § 226.7];** <br><br> **(7) FAILURE TO PAY WAGES WHEN DUE [LAB. CODE, §§ 201-203];** <br><br> **(8) FAILURE TO PAY MINIMUM WAGE [LAB. CODE, §§ 1194, 1194.2, 1197];** <br><br> **(9) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].** |

**REPRESENTATIVE ACTION FOR:**

**(10)  CIVIL PENALTIES UNDER LABOR CODE'S PRIVAGE ATTORNEY GENERAL ACT ("PAGA") [LAB. CODE § 2698 ET SEQ.]**

**DEMAND FOR JURY TRIAL**

Plaintiffs SUSAN JOHNSON and CHRISTI MCCRACKEN ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant GIGSMART, INC., a Delaware corporation ("GigSmart" or "Defendant"), and DOES 1 through 100, inclusive, and alleges on information and belief as follows:

## I.    INTRODUCTION

1.     Defendant GigSmart is a fast, low-cost staffing company that provides hourly workers to businesses. GigSmart advertises pre-vetted, reliable workers available at a moment's notice without the formality of interviews or traditional hiring models for companies in need of extra labor. So called "shift gigs" are carried out by relatively low-skilled workers for hourly pay (referred to as "Workers"). Among other industries, GigSmart offers its staffing services in the warehousing, construction, restaurant, landscaping, moving, delivery, and retail industries.

2.     Workers are a core component of Defendant's staffing company who must operate under the controls in place to satisfy GigSmart's customer base. Yet, Defendant claims they are not employees and instead "independent contractors."

3.     By refusing to recognize its Workers as employees, Defendant cheats these individuals out of protections provided by California labor laws such as reimbursement of business

expenses, wage deduction protection, accurate wage statements, overtime pay, meal and rest breaks, timely payment of wages, and payment of a minimum wage. Defendant's misclassification of its Workers also robs the State of important employee tax revenue and gives Defendant an undue advantage over law-abiding competitors who bear the necessary expenses associated with employing similar workers.

4.     This Class Action seeks recovery on behalf of Plaintiffs and other similarly situated Workers in California for violations of California's Labor Code and Industrial Welfare Commission Wage Orders ("Wage Orders") along with violations of California's Unfair Competition Law predicated upon violations of California's Labor Code and Wage Orders.

## II.    **JURISDICTION & VENUE**

5.     This Court has subject matter jurisdiction to hear this case because the damages and penalties sought herein resulting from Defendant's conduct exceeds the jurisdictional minimum of this Superior Court.

6.     Venue is proper pursuant to Code of Civil Procedure, sections 395 and 395.5, among other sections. Defendant employs workers in this County. Furthermore, the obligation to comply with the Labor Code for the group of workers relevant to this case and the resulting liability for misclassifying and denying Labor Code/Wage Order benefits to those workers arose in this County, among others.

## III.    **PARTIES**

7.     Ms. Johnson is and at all relevant times was a resident of Los Angeles, California. She formerly worked as a Worker for Defendant and was classified as an independent contractor.

8.     Ms. McCracken is and at all relevant times was a resident of Los Angeles, California. She formerly worked as a Worker for Defendant and was classified as an independent contractor.

9.     GigSmart, Inc. is a Delaware corporation with a principal business address at 999 18th Street, Suite 1750S, Denver, Colorado 80202.

10.     Plaintiffs do not know the true names and/or capacities, whether individual, partners, or corporate, of Defendants sued herein as DOES 1 through 100, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiffs will seek leave to amend this Complaint when the

true names and capacities of these Defendants have been ascertained. Plaintiffs are informed and believe and thereon allege that these Defendants are responsible in whole or in part for Plaintiffs' alleged damages.

11.     At all times mentioned, Defendants were the agents, alter egos, servants, joint venturers, joint employers, or employees for each other. Defendants acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. All conduct was ratified by Defendants, and each of them.

## IV.    GENERAL ALLEGATIONS

### A.    GigSmart's Business Model

12.     GigSmart was founded in 2016 and operates a staffing company which "allows business to directly access on-demand workers for short and long-term jobs[.]" https://gigsmart.com/about-us/. GigSmart is available in all 50 states across the United States. https://help.gigsmart.com/what-cities-are-you-available-in-requesters.

13.     To book GigSmart's Workers, GigSmart's clients must first create an account with GigSmart from their web browser or through the GigSmart app. The client then posts a gig to GigSmart. Vetted Workers then accept the posted gig. https://help.gigsmart.com/what-is-gigsmart-requesters. When GigSmart's clients pay GigSmart for its Workers' services, GigSmart retains ~20% of the payment. GigSmart's clients are often in the warehousing, catering, restaurant, retail, logistics, delivery, construction, landscaping, and facility services industries. https://gigsmart.com/.

14.     To fulfill its customers' staffing requests, GigSmart maintains a network over one million Workers "across all industries and positions" with "experience aligned with [the client's] specific needs." https://gigsmart.com/hire-workers/temporary-staffing/. Plaintiffs were two such Workers.

15.     Needing to satisfy its customers and to provide the staffing services they want, GigSmart retains and exercises a great deal of control over its Worker workforce. For example, GigSmart sets start and stop times for work, requires location tracking and data-enabled smart phones during work hours, punishes or terminates workers for not timely responding to potential gig

assignments, punishes or terminates workers for failing to show up for gig shifts once accepted, and retaining discretion to not pay for shifts if the worker is late.

**B.     GigSmart Misclassified Drivers**

16.     Integral to Defendant's staffing business, Defendant utilizes the labor of Workers, like Plaintiffs and the Class they seek to represent, to carry out gig services for GigSmart's third-party customers. GigSmart labors Workers as "independent contractors." In short, these Workers perform a central part of GigSmart's staffing business: the labor for GigSmart's customers for which the customers contract with GigSmart to staff. The work of Workers is necessary to GigSmart's staffing business and is continuously performed for GigSmart. Further, GigSmart holds itself out as a staffing business. Workers are naturally an essential component of GigSmart's business model.

17.     GigSmart strictly controls and regulates Workers. Workers must follow the terms of GigSmart's onerous Terms of Use along with other written instructions from GigSmart. Under these operating requirements and standards, GigSmart exerts control and direction on Workers in connection with the performance of their staffing services, both in contract and in fact. This control and direction includes, but is not limited to, the following:

a.     Workers must download GigSmart's mobile application on iOS or Android. They then must create a Worker Profile by adding their applicable positions and qualifications, professional summary, education, work history and more. Workers can then start receiving gig shifts.

b.     GigSmart also advises its Workers to complete a Worker profile. This includes uploading a professional profile photo, telling potential hiring managers about themselves in their biography section, updating the education section in their Worker profile, and including any relevant work history.

c.     Workers must be at least 14 years of age to create an account with GigSmart. Workers under 18 years of age need parental consent to sign up.

d.     To receive updates about new gigs and possible work, Workers must share their location and allow GigSmart to monitor their location even when they

are not performing a gig shift. Should a Worker turn off location monitoring, GigSmart will not notify the Worker of new gig shifts and they cannot work.

e.  When a Worker has an upcoming gig shift, GigSmart will send the worker a Shift Confirmation SMS. The Worker must reply "Y" to the text message before the deadline stated in the message. If a Worker fails to respond within before the deadline, they will no longer be assigned to the gig shift.

f.  If a Worker is marked late for a shift, they will not be able to start their Shift clock when they arrive on-site. GigSmart's clients can then start the Shift clock for the Worker so they can get paid, or they can cancel the Worker's shift without payment.

g.  GigSmart has the ability to cancel a Worker's shift. GigSmart can do so at its customer's request, because the Worker failed to respond to the Shift Confirmation SMS, because it failed to complete the Worker's background check in time, or because it restricted the Worker's account.

h.  GigSmart offers "Verified Gigs." If a Worker is selected for a Verified Gig then GigSmart runs their background check and/or motor vehicle records check. The Worker must clear the checks in order to perform the gig.

i.  GigSmart permits its clients to edit gig shift start and end times at their discretion. Workers receive payment for only 50% of the shift duration if: (1) the client cancels a shift that was published ten or more hours before the shift start time within ten hours of the start time; or (2) the client cancels a shift that was published less than ten hours before the shift start time within one hour of its time; or (3) the client cancels a shift after the Worker has been geo-checked into the gig site.

j.  GigSmart clients can send home Workers within their first hour of work and GigSmart will refund the client up to $30. Workers will receive no pay.

k.  GigSmart controls how Workers communicate with its clients. Workers cannot contact GigSmart's clients until the worker is selected for a gig by the

client. After being selected for the gig, the Worker can message the client using GigSmart's in-app messaging feature.

l.  Workers must consent to and abide by a Terms of Use policy. GigSmart may ban Workers from using GigSmart should the Worker violate the Terms of Use.

m.  GigSmart may also limit, block, suspend, deactivate, or cancel a Worker's GigSmart account in its sole discretion, with or without cause, without or without prior notice, and at any time. This is at will employment.

n.  If GigSmart terminates a Worker's account, it may communicate to other users that the Worker's account was terminated and why it was terminated. Workers are not entitled to any payment for services cancelled or delayed as a result of their termination.

o.  Should a Worker be suspended, GigSmart prohibits them from applying for any gigs and all currently applied for gigs will be canceled.

p.  GigSmart may also terminate or suspend a Worker who provides what GigSmart deems, in its sole discretion, to be misleading information.

q.  Workers are prohibited from using GigSmart's Platform to solicit, advertise, or contact others for employment, contracting, or any other purpose without express written permission from GigSmart.

r.  GigSmart requires that Workers agree to not, and not permit or encourage other to, do any of the following in relation to GigSmart's Platform:

    i.  Ignore or violate any of the Conditions of Eligibility;

    ii.  Use, hack, modify, or change any user's account;

    iii.  Misrepresent yourself or the services you offer as a Worker, or otherwise misrepresent your identity, qualifications, profile, or "request;"

iv.    Post any content in any inappropriate manner or context, including categories or areas on the GigSmart Platform, ratings, or other information and data;

v.    Use an automated system to access GigSmart's Platform for any inappropriate purpose without GigSmart's prior written approval, specifically, but not limited to, robots, spiders, offline readers, or scrapers;

vi.    Duplicate or copy, or otherwise misuse or misappropriate, copyrighted, proprietary, or other Platform information and/or content for use on any third party site;

vii.    Misuse and/or disrupt the Platform by transmitting more request for Services messages in a given period of time and with such volume that a human being could not reasonably produce by using available industry web browsers;

viii.    Undertake any action, which in GigSmart's sole discretion unreasonably interferes with the Platform's infrastructure, its operations, its use by GigSmart, Workers, clients, and third parties;

ix.    Undertake any action that circumvents, disables, or otherwise interferes with the Platform's fee structure, billing procedures, or fees owed, or with the security features of the Platform, including, without limited to, the use of viruses or other technologies and processes that may damage GigSmart or users;

x.    Use the Platform in any way that violates any User's proprietary rights, including copyrights, trademarks, service marks, confidential information, rights to privacy, or other protected rights;

xi.    Misappropriate, accumulate, use, disclose, or publish any personally identifiable information and data for any reason, including, but not limited to, commercial solicitation purposes, names or other account

information from clients and users, or use the Platform itself for any reason not explicitly authorized by the Terms of Use;

xii.   Use another person's Account, misrepresent yourself or services offered through the Platform, misrepresent your identity or qualifications, or post content in any inappropriate category or areas on the Platform;

xiii.  Use any automated system, including but not limited to robots, spiders, offline readers, scrapers to access the Platform for any purpose without GigSmart's prior written approval;

xiv.   In any manual or automated manner copy copyrighted text, or otherwise misuse or misappropriate Platform information or Content, including but not limited to use on a mirrored, competitive, or third party site;

xv.    Undertake or perform any actions inappropriate or unlawful, including the submission of inappropriate or unlawful content, content which is defamatory, profane, harassing, hateful, or otherwise discriminatory in nature, or which sponsors, promotes, supports, or encourages inappropriate or illegal activity or conduct, which would be considered a criminal offense or which would give rise to civil liability or violate any federal, state, or local law or ordinance;

xvi.   Use a profile page or username to promote services not offered on or through GigSmart;

xvii.  Take any action that interferes with or undermines the usefulness of the rating system;

xviii. Engage in any illegal or fraudulent conduct, including, but not limited to any action or conduct designed to interfere with the payment of fees through the Platform;

xix.      Defame abuse, harass, harm, stalk, threaten or otherwise violate the legal rights (including without limitation rights of privacy and publicity) of others;

xx.       Use the Platform or engage with other Users for any purpose that is in violation of federal, state, or local law or regulation, including without limitation, wage and hour and working condition laws and regulations;

xxi.      Upload files that contain software or other material that violates the rights of any third party, including, without limitation, intellectual property rights or rights of privacy or publicity;

xxii.     Upload files that contain viruses, Trojan horses, worms, time bombs, spiders, cancelbots, corrupted files, or any other similar software, malware or materials that may damage, interfere with, disrupt, impair, disable or otherwise overburden the operation of any device, computer system or network;

xxiii.    Take any action that would undermine any aspect of the Platform or use the Platform in any manner that could interfere with, disrupt, or inhibit other users from fully enjoying the Platform or that could damage, disable, overburden or impair the functioning of the Platform in any manner;

xxiv.     Impersonate another person or allow any other person or entity to use your username, password or membership;

xxv.      Post the same content repeatedly or spam;

xxvi.     Download any file posted by another user that you know, or reasonably should know, cannot be legally distributed through the Platform;

xxvii.    Access, download, or copy any information, content and/or materials from the Platform through artificial means (including

without limitation spiders, scrapers, hacking devices, computer programs, bots or other such means); and/or

xxviii.    Reproduce duplicate, copy, sell, resell or exploit any information, materials or content on the Platform.

**C.    GigSmart's Failure to Reimburse and Unlawful Deductions**

18.    By policy and practice, GigSmart does not reimburse Workers for necessary business expenses. These expenses include vehicle usage and related expenses and uniforms. Further, GigSmart does not reimburse Workers for cell phone and related data expenses, despite requiring Workers to use a cell phone in the course of completing their work.

19.    GigSmart also makes unlawful deductions from the wages of Workers. For example, GigSmart charges Workers a 3% fee should they want their wages paid faster. While GigSmart need not pay instantly, that it does pay instantly does not entitle it to deduct wages like a pay day lender.

**D.    GigSmart's Failure to Comply with Other California Wage and Hour Laws**

20.    As explained further below, as a result of its unlawful misclassification, GigSmart fails to provide Workers with a minimum wage for all hours worked and overtime pay where applicable, fails to make meal and rest breaks available to Workers, fails to pay Workers separately for res periods even if taken, fails to pay Workers all wages when due, and fails to provide Workers compliant wage statements in violation of California law.

## V.    CLASS ALLEGATIONS

21.    Pursuant to Code of Civil Procedure, section 382, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated members of the Class, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

22.    **Class Period.** The Class Period shall be defined as: from four years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

23.  Plaintiffs seek to represent the following Class of persons:

    a.  All individuals during the Class Period who personally performed gig services on the GigSmart Platform, i.e., a "Worker," in California and who were not classified as employees (the "Class").

    b.  This Class does not include Defendant, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

24.  Plaintiffs reserve the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

25.  **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiffs are informed and believes that there are thousands of individuals meeting the Class definition. Defendant has access to data sufficient to identify the members of the Class since they all perform work via the same mobile application and cannot outsource the work without GigSmart's permission.

26.  **Adequacy of Representation.** The named Plaintiffs are fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiffs' attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiffs. Plaintiffs' attorneys are highly experienced in employment Class action litigation. Plaintiffs intend to prosecute this action vigorously.

27.  **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiffs and the claims of the Class as follows:

    a.  Class:

        i.  Whether Defendant misclassified Workers as "independent contractors" instead of employees (*e.g.*, whether GigSmart can meet its burden to meet each Prong of California's ABC test and/or its *Borello* test for employment status);

  ii.   Whether Defendant failed to reimburse Workers for reasonable business expenses;

  iii.   Whether Defendant made unlawful deductions from Workers' wages;

  iv.   Whether Defendant properly provided meal and rest breaks to Workers;

  v.   Whether Defendant compensated Workers separately for rest breaks;

  vi.   Whether Defendant paid Workers all wages when due;

  vii.   Whether Defendant provided Workers with compliant wage statements;

  viii.   Whether Defendant failed to properly pay Workers overtime;

  ix.   Whether Defendant failed to pay Workers a minimum wage for each hour worked; and

  x.   Whether Defendant engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 *et seq.* as it relates to Workers.

28. **Typicality.** Plaintiffs' claims are typical of the claims of all members of the Class because Defendant applied and continues to apply its illegal classification and pay practices to all Workers.

29. **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class Members. Each Class Member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiffs are unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Failure to Reimburse Expenses—
### Lab. Code, § 2802 and applicable IWC Wage Orders

30.    Plaintiffs incorporate by reference every allegation contained above.

31.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

32.    Workers necessarily incur many types of expenses that Defendant does not reimburse. These include but are not limited to vehicle usage and associated expenses and expenses for uniforms. Further, Defendant does not reimburse Workers for cell phone and related data expenses despite requiring its Workers to use a cell phone in the course of completing their work.

33.    As alleged above, Plaintiffs and the Class incurred business expenses while performing necessary work for Defendant. They were never reimbursed because they were uniformly misclassified as independent contractors.

34.    The California Labor Code, section 2802, and applicable California Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Defendant failed to do so.

35.    Plaintiffs and the Class have been damaged by Defendant's failures in this respect in an amount to be proven at trial.

36.    Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on Defendant's violations.

## SECOND CAUSE OF ACTION
### Unlawful Deductions From Wages—
### Lab. Code, §§ 221-223 and applicable IWC Wage Orders

37.    Plaintiffs incorporate by reference every allegation contained above.

38.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

39.    Under Labor Code, section 221 it is "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." This protection extends to deductions for mistakes in employees' work or other non-malicious conduct.

1  Applicable California Wage Orders further provide that the only circumstances under which an

2  employer can make a deduction from an employee's wages are due to cash shortage, breakage, or

3  loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the

4  employee's gross negligence or dishonest or willful act.

5      40.     Despite this, Defendant made and continues to make deductions from the wages of

6  its misclassified Workers. Defendant, for example, unlawfully deducts a 3% fee from Workers'

7  wages should they want their wages paid faster.

8      41.     Additionally, GigSmart retains roughly 20% of the amount paid by its clients for

9  Workers' services.

10     42.     Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs,

11 and attorneys' fees based on these violations.

**THIRD CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements—**
**Lab. Code, § 226 and applicable Wage Orders**

14     43.     Plaintiffs incorporate by reference every allegation contained above.

15     44.     Plaintiffs bring this cause of action as a Class action on behalf of themselves and the

16 Class.

17     45.     The purpose of Labor Code section 226 is to ensure that employees can determine

18 whether they are being paid their wages in accordance with California law. Under Section 226(h),

19 "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section

20 and is entitled to an award of costs and reasonable attorney's fees."

21     46.     Defendant violated the above statute by failing to provide a compliant wage statement

22 to its Workers.

23     47.     Defendant's violations of section 226 and applicable Wage Orders are ongoing and

24 will continue until and unless this Court enters an injunction barring such violations. Therefore,

25 Plaintiffs seek damages and injunctive relief pursuant to Labor Code, section 226, subsections (e)

26 and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

27

28

**FOURTH CAUSE OF ACTION**
**Failure to Provide Overtime—**
**Lab. Code, § 510 and applicable Wage Orders**

48.    Plaintiffs incorporate by reference every allegation contained above.

49.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

50.    Labor Code, section 510, and applicable Wage Orders require overtime pay of at least 1.5 times an employee's regular rate of pay for all hours worked over 8 in a day or 40 in a week.

51.    Workers, including Plaintiffs, work well over 8 hours per day and well over 40 hours per week in line with Defendant's expectations and standards as necessary to complete the work assigned to them. Despite this, they receive no overtime pay in violation of California law.

52.    Defendant is liable to Plaintiffs and the Class for unpaid overtime, interest, reasonable attorneys' fees and costs, and any related statutory penalties.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Meal Periods—**
**Lab. Code § 226.7 and applicable Wage Orders**

53.    Plaintiffs incorporate by reference every allegation contained above.

54.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

55.    Under Labor Code, sections 226.7 and 512, as well as applicable IWC Wage Orders, employers must provide a 30-minute uninterrupted, off-duty meal period for each work shift of more than 5 hours. Depending on hours worked, a second meal period may be owed as well. Where an adequate meal period is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

56.    Defendant has no meal or rest policies and they do not record when breaks start or stop. Nor does Defendant provide for uninterrupted meal periods for Workers or make any effort to relieve them of all duties.

57.    Defendant does not pay premium wages in lieu of these breaks as required by law. And Workers have not otherwise waived their entitlement to meal breaks.

58.    As a proximate result of Defendant's unlawful conduct, Plaintiffs and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SIXTH CAUSE OF ACTION**
**Failure to Provide Rest Breaks—**
**Lab. Code, § 226.7 and applicable Wage Orders**

59.    Plaintiffs incorporate by reference every allegation contained above.

60.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

61.    Pursuant to Labor Code, section 226.7 and 226.2, as well as applicable IWC Wage Orders, employers must provide a 10-minute uninterrupted, off-duty rest break for each work shift of 3.5 hours or more.  During these periods, an employer must relieve the employee of all duties and relinquish all control over how an employee spends their time. Such rest breaks are to be paid. Where a rest break is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

62.    Defendant's pay policies call for pay only for time worked. As such, it fails to provide for rest breaks or, to the extent ever taken, pay Workers for rest break time. Defendant also failed to pay compensation in lieu of these paid breaks.

63.    As a proximate result of Defendant's unlawful conduct, Plaintiffs and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Wages When Due—**
**Lab. Code, §§ 201-203 and applicable Wage Orders**

64.    Plaintiffs incorporate by reference every allegation contained above.

65.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and all members of the Class who are no longer working for Defendant.

66.    Defendant failed to pay all wages due, including the above-mentioned missing wages that went unreimbursed and wages illegally deducted from earnings, upon separation of employment

as required by Labor Code sections 201 through 203. As such Plaintiffs and other former Workers in the Class are owed penalties in amount up to 30 days' wages.

67.    Defendant's actions in this respect were willful within the meaning of Labor Code, section 203, entitling Plaintiffs and the Class Members to recover waiting time penalties. Defendant failed to pay the above wages pursuant to its standard policies and procedures not to provide employment protections to Workers. Defendant knowns or should know Workers are misclassified as independent contractors. Defendant is represented by sophisticated counsel with a deep understanding of California law who surely understand Defendant cannot meet its burden to prove Workers are independent contractors.

68.    Plaintiffs and the Class Members are entitled to recover waiting time penalties and unpaid wages, as well as interest, applicable penalties, attorneys' fees, and costs.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage —**
**Lab. Code, §§ 1194, 1194.2, 1197 and applicable IWC Wage Orders**

69.    Plaintiffs incorporate by reference every allegation contained above.

70.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

71.    Labor section 1197 makes it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked.

72.    Labor section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

73.    Labor section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

74.    Defendant frequently compensates its Workers at less than the minimum wage for each hour they work. For example, if a Worker reports to their gig but Defendant's clients determine the work is not needed, the worker is not paid. Similarly, if a Worker is late, they may be relieved of duties with no payment. Defendant and its clients may edit the start and stop times for a shift at any time, which results in shifts being cut short or otherwise not available for the scheduled hours.

75.     As a result of Defendant's improper pay policy and/or practices, as described herein, Defendant failed to pay Plaintiffs and other Class Members the minimum wage that these Workers were entitled to, for each hour worked, under Labor Code section 1197 and applicable Wage Orders.

76.     Plaintiffs are informed and believe, and based thereon allege, that Defendant's failure to pay the minimum wage for each hour worked, as described herein, was done willfully.

77.     Additionally, as a result of Defendant's failure to pay Plaintiffs and other misclassified Workers the minimum wages for all hours worked, these Workers were not timely paid all earned wages as required by Labor Code section 204.

78.     Based on Defendant's conduct, as alleged herein, Defendant is liable to the Class Members, including Plaintiffs, for unpaid minimum wage compensation pursuant to California Labor Code sections 1194 and 1197, and applicable IWC Wage Orders, liquidated damages in an amount equal to the unpaid wages owed to such employees, plus interest, pursuant to California Labor Code sections 1194.2, and attorneys' fees and costs of suit, pursuant to California Labor Code sections 1194 and 1194.2.

## NINTH CAUSE OF ACTION
### Unfair Business Practices—
### Bus. & Prof. Code, § 17200 et seq.

79.     Plaintiffs incorporate by reference every allegation contained above.

80.     Defendant knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

a.     Intentionally misclassifying its employee Drivers as "independent contractors;"

b.     Imposing unreimbursed business expenses on misclassified employees;

c.     Imposing unlawful deductions on misclassified employees;

d.     Failing to pay overtime to Worker employees;

e.     Failing to pay Workers for each hour worked;

f.     Failing to provide adequate meal and rest breaks to Workers;

g.     Failing to pay wages when due; and

h.     Failing to provide accurate pay statements to Workers.

81.     Defendant intended to, and did, profit from these illegal acts.

82.     As a direct and proximate result of the above, Plaintiffs and the Class Members have lost money or property, thereby entitling these individuals to restitution.

83.     Pursuant to the Business and Professions Code, Plaintiffs and the Class Members are entitled to restitution of money or property acquired by Defendant by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

84.     Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Defendant's ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiffs seek such public injunctive relief here prohibiting Defendant from continuing its illegal practice of misclassifying Workers, including Plaintiffs, and denying them of important wage laws.

85.     If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiffs, Class Members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

86.     The Class, including Plaintiffs, have no plain, speedy, and adequate remedy at law.

87.     Defendant will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiffs, the Class, and of the public, if not enjoined by this Court.

88.     The success of Plaintiffs in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

89.     Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiffs are therefore entitled to an award of attorneys' fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

**TENTH CAUSE OF ACTION**
**Violation of PAGA; Enforcement of PAGA—**
**Labor Code § 2698, et seq.**

90.    Plaintiffs incorporate by reference every allegation contained above.

91.    PAGA permits aggrieved employees, like Plaintiffs, to recover civil penalties for violations of numerous Labor Code sections. *See* Labor Code § 2699.5. Plaintiffs seek to recover representative PAGA penalties stemming from Defendant's Labor Code violations occurring to others (*i.e.*, non-individual PAGA penalties) as enumerated above and below occurring during the relevant PAGA period (one year prior to their PAGA letter to the LWDA plus any applicable tolling). By misclassifying Workers (or similarly titled individuals) as independent contractors over this period, Defendant willfully misclassified them and failed to comply with various Labor Code provisions.

92.    Defendant's conduct, as alleged above, violates numerous sections of the California Labor Code, including, but not limited to, the following:

a.    Labor Code sections 201, 202, 203, 204, 210, 216, 225.5, and 223 for failure to timely pay Plaintiffs and other aggrieved employees all earned wages;

b.    Labor Code sections 223, 1194, 1194.2, 1197, 1197.1, and 1199 for failure to pay Plaintiffs and other aggrieved employees all mandatory minimum wages;

c.    Labor Code sections 510, 558, and 1198, for failure to compensate Plaintiffs and other aggrieved employees with all required overtime pay;

d.    Labor Code sections 226 and 226.3, for failure to provide accurate wage statements to Plaintiffs and other aggrieved employees;

e.    Labor Code sections 226.2, 226.7, 512, and 558 for failure to provide meal periods and rest periods to Plaintiffs and other aggrieved employees;

f.    Labor Code section 226.8, for willful misclassification of Plaintiffs and other aggrieved employees;

g.    Labor Code section 432.5, for requiring Plaintiffs and other aggrieved employees to agree to terms in writing known to be prohibited by law, including the agreement between Plaintiffs and other aggrieved employees

and Defendant that allows failure to reimburse Plaintiffs and other aggrieved employees for business expenses reasonably incurred;

h.    Labor Code section 1174, for failure to maintain accurate employment records related to Plaintiff and other aggrieved employees' work;

i.    Labor Code section 1194.5, for Defendant's violations as described herein;

j.    Labor Code section 1198, for Defendant's employment of Plaintiffs and other aggrieved employees for longer than the maximum hours and violative of the standard conditions of labor fixed by the Industrial Welfare Commission;

k.    Labor Code sections 221-223, for Defendant's unlawful deductions from the wages of Plaintiffs and other aggrieved employees'; and

l.    Labor Code section 2802, for failure to reimburse employees for business expenses reasonably incurred.

93.    Plaintiffs have complied with all administrative requirements and pre-conditions contained with California Labor Code Section 2699.3. Plaintiffs notified the California Labor Workforce Development Agency ("LWDA") on December 18, 2023 and waited the prescribed period. Plaintiffs have not received any response from the LWDA.

94.    Pursuant to PAGA and California Labor Code sections 2699, 2699.3, and 2699.5, Plaintiffs are entitled to and hereby seeks civil penalties against GigSmart, in addition to reasonable attorney fees and costs, on behalf of themselves and all others similarly-aggrieved current and former employees for violations of the Labor Code sections referred to in this Class Action Complaint.

## VII.    __PRAYER FOR RELIEF__

Plaintiffs pray for judgment against Defendant, as follows:

1.    For an order certifying the Class as described herein, appointing Plaintiffs as Class representatives, and their counsel as Class counsel;

2.    For compensatory damages according to proof;

3.    For enhanced damages, liquidated damages, and penalties as permitted under prevailing law;

4.    For civil penalties according to proof;

5.    For pre-judgment and post-judgment interest where allowable;

6.    For costs of suit;

7.    For injunctive relief, including public injunctive relief, as described herein;

8.    For restitution as described herein;

9.    For punitive damages, where appropriate;

10.    For reasonable attorneys' fees and costs; and

11.    For such other and further relief as this Court may deem just and proper.

### VIII.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted:

Dated: March 1, 2024                **NICHOLAS & TOMASEVIC, LLP**

By:    _____
       Craig M. Nicholas (SBN 178444)
       Shaun Markley (SBN 291785)
       Jordan Belcastro (SBN 339570)
       225 Broadway, 19th Floor
       San Diego, CA 92101
       Tel: (619) 325-0492
       Fax : (619) 325-0496
       Email: cnicholas@nicholaslaw.org
       Email: smarkley@nicholaslaw.org
       Email: jbelcastro@nicholaslaw.org

       Attorneys for Plaintiffs SUSAN JOHNSON and
       CHRISTI MCCRACKEN, individuals, on behalf of
       themselves and all others similarly situated